CENTRAL TRUST CO. OF NEW YORK v. MARIETTA & N. G. RY. CO. et al. (MORSE, Intervener).

(Circuit Court, N. D. Georgia. January 23, 1896.)

1. RAILROAD MORTGAGES—INTERPRETATION—EXCHANGE OF BONDS.

A provision in a mortgage executed by a railroad company after an extension of its line, authorizing the trustee to exchange bonds secured thereby for an equal amount of outstanding bonds issued before the extension, and requiring it to hold the old bonds as collateral for the new ones, until all the old bonds were surrendered, when the entire issue was to be canceled, *held* to mean that an exchange made by holders of some of the old bonds was binding on them, although the entire issue was never surrendered so as to authorize their cancellation, and that a holder of the old bonds, who had made such an exchange, was not entitled to have them back.

2. SAME.

A holder of railroad bonds exchanged them for bonds of a subsequent issue, covering an extension of the road, under a provision for that purpose contained in the mortgage securing the new bonds. Afterwards he sought to have his old bonds returned, alleging as one ground therefor that the new mortgage was invalid. When the question of his right to have his bonds returned came before the court, the new mortgage had in fact been foreclosed by the court as a valid instrument. *Held*, that the court would not thereafter declare the mortgage invalid.

Tully R. Cormick, for intervener.
Henry B. Tompkins, for Central Trust Co.

NEWMAN, District Judge. This is the final hearing on the intervening petition of George W. Morse and others in the above-entitled cause. The facts necessary to an understanding of the questions submitted are briefly these: The Marietta & North Georgia Railway ran from Marietta, Ga., to Ellijay, in Fannin county, Ga. On the 1st day of July, 1881, the Marietta & North Georgia Railway Company executed to the Boston Safe-Deposit Company two mortgages; the first mortgage to secure 720 bonds of $1,000 each, and the second mortgage to secure 486 bonds of $1,000 each; said mortgage being upon all the railroads then built, and thereafter to be built, by said North Georgia Railway Company in the state of Georgia. Some years after this an extension of this road was commenced by certain parties, in order to make a line to Knoxville, Tenn. An issue of bonds was made, bearing date January 1, 1887, secured by a mortgage of the same date. The first company was known as the Marietta & North Georgia Railway Company; the second, as the Marietta & North Georgia Railroad Company. The extension of this road into Tennessee was under a charter granted to a company known as the Knoxville Southern

Railway Company, which was afterwards consolidated under an arrangement between the two companies, and known as the Marietta & North Georgia Railway Company. The deed of trust or mortgage executed by the railway company in 1887 contained this provision:

"But the said trustee may issue bonds secured by these presents, and exchange for an equal amount of the existing outstanding bonds of said Marietta and North Georgia Railway Company, which bonds so received in exchange shall be held by said trustee as collateral for the bonds issued under this mortgage, until all of said bonds issued by the Marietta and North Georgia Railway Company shall have been surrendered; and, when all of said bonds shall have been surrendered, they shall be forthwith canceled by said trustee."

The petitioner in this case had bonds of the Marietta & North Georgia Railway Company, which he in 1887 exchanged for bonds of the new company. He claims in his petition, and by the argument of his counsel (the entire road having been sold), that his right is that of a holder of the original bonds of the railway company. That is to say, his contention is that the exchange of the old bonds of the railway company for the new bonds of the railroad company did not become operative until all the bonds of the first company were surrendered to the Central Trust Company, as trustee, which was never done. Only $817,000 of the old bonds, out of an issue of $1,206,000, were exchanged. The opposing contention by the trust company is that the old bonds so exchanged were to be held by it as collateral for the whole issue of new bonds, and that all they received on these old bonds from the proceeds of the sale of the road must be divided pro rata among all the holders of the bonds. If all the old bonds had been exchanged, they would, by the provision of the mortgage above quoted, have been canceled,—would have been out of the way,—and no such question as this could have arisen. Where only a part were surrendered, it seems to me that the sound construction of this clause, and the correct one, is that, so far as they were exchanged, the exchange was good, and they were to be held as collateral for the new issue of bonds. The holders of old bonds, who made this exchange, had the benefit of the new bonds on the extended line of the road not covered by the old bonds, and also the benefit of the old bonds as collateral for themselves and other holders of new bonds. I do not believe that it was the intention of this clause that the failure of holders of the entire issue of old bonds to make an exchange should void the entire transaction and the exchange, and entitle them to have the old bonds back. As stated, I think the other view is the correct one.

2. It is also claimed that the petitioner has the right, for an additional reason, to have his old bonds returned to him, and all the rights which full ownership and control of the same would give him, returning, of course, to the trust company the new bonds. He says he was of the opinion, and was induced by the officers of the company to believe, that the new mortgage on the Tennessee end of the road was a valid and perfect mortgage, but contends that the same was invalid and created no lien. The fact is that this mortgage has been foreclosed in this court, and in Tennessee, as a mortgage of the date it bears, and with all the rights which a mortgage lien of that

date on the property covered by it could have. The court will certainly not hold the mortgage to be invalid after it has foreclosed the same, and that foreclosure has been concurred in by the circuit court in Tennessee, and has been entered there. It has been treated as a valid instrument of the full character it purports to bear, and this is all that the intervener had any right to expect it to be. Entertaining this view of the intervener's second contention, it is unnecessary to discuss, or to go more fully into the question of, the validity or the invalidity of the mortgage on this road in Tennessee. The conclusion is that the intervener is not entitled to relief upon either of the grounds stated, and therefore his intervention must be dismissed.